IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| BRIAN GAULDIN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-01249-STA-egb |
| ) | |
| RUSTY WASHBURN, ) | |
| ) | |
| Respondent. ) | |

ORDER DIRECTING CLERK TO MODIFY DOCKET,
DENYING § 2254 AMENDED PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Brian Gauldin, a Tennessee state prisoner, has filed an amended *pro se* habeas corpus petition under 28 U.S.C. § 2254 ("Amended Petition"). (ECF No. 18.) For the reasons that follow, the Amended Petition is **DENIED**.

**BACKGROUND**

**I.     State Proceedings**

The following background summary is drawn from the state court record (ECF No. 26), the decision in Gauldin's direct appeal, *State v. Gauldin,* 2014 WL 12651022, at *1 (Tenn. Crim. App. Aug. 22, 2014), *perm. appeal denied* (Tenn. Dec. 18, 2014), and the decision in his appeal from denial of post-conviction relief, *Gauldin v. State*, 2016 WL 6601552, at *1 (Tenn. Crim. App. Nov. 7, 2016), *perm. appeal denied* (Tenn. Mar. 9, 2017).

In 2011, a Dyer County, Tennessee, grand jury returned a four-count indictment charging Petitioner with the sale of .5 grams or less of cocaine in a drug-free zone (Counts 1 and 4), the sale of a Schedule III controlled substance in a drug-free zone (Count 2), and the sale of .5 grams or more of cocaine in a drug-free zone (Count 3). (ECF No. 26-13 at 5-6.) After his first trial ended in a hung jury, the prosecution "chose to nolle prosequi counts one and two." *Gauldin*, 2016 WL 6601552, at *1.

A second jury trial was conducted in 2013. Officers from the Dyersburg Police department testified that they completed controlled purchases of crack cocaine from Gauldin on December 21 and 22, 2010. The drug sales, which were captured on audio and video tapes through a confidential informant, took place within 1000 feet of a Dyersburg city park called Scott Street Park. The confidential informant testified to purchasing crack cocaine from an individual on the dates in question. A technician from the Tennessee Bureau of Investigation ("TBI") testified that the drugs sold on December 21 and 22 weighed .55 grams and .39 grams, respectively. She explained that a former TBI agent had originally reported weights of .5 and .4 grams. No witnesses were called for the defense.

The jury found Gauldin guilty on both counts, and he received an effective sentence of twenty years' incarceration as a Range III Persistent Offender. He took an unsuccessful direct appeal challenging the sufficiency of the evidence to support his convictions, *Gauldin*, 2014 WL 12651022, at *3, and his application for permission to appeal to the Tennessee Supreme Court was denied (ECF No. 20-22).

Petitioner subsequently filed a state *pro se* post-conviction petition (ECF No. 26-13 at 10-20), which was amended by his appointed counsel (*id.* at 33-35). After conducting an evidentiary hearing, the post-conviction court denied relief in a written decision. (*Id.* at 42-51).

The Tennessee Court of Criminal Appeals ("TCCA") affirmed the decision, *Gauldin*, 2016 WL 6601552, at *6, and the Tennessee Supreme Court denied permission to appeal (ECF No. 26-22).

## II. Federal Habeas Petition

In October 2015, Gauldin filed his *pro se* habeas corpus petition under 28 U.S.C. § 2254. (ECF No. 1.) On January 19, 2017, he filed the Amended Petition, which presents the following claims:

Claim 1: "Tampering with evidence";

Claim 2: "Sentence range";

Claim 3: "Double jeopardy";

Claim 4: "Ineffect[ive] assistance of counsel"

> 4A: Counsel failed to present evidence that Scott Street Park "was no longer an operational park" at the time of the offenses.
>
> 4B: Counsel failed to "present an expert witness who could explain why there was a difference in the weight [of the drugs] from the lab reports and rebut the explanation of the Lab Agent."
>
> 4C: Counsel failed to advise Petitioner that he was subject to being sentenced as a Range III Persistent Offender.
>
> 4D: Counsel failed to object that the "jury . . . was unconstitutionally empaneled" because "there were no African-Americans on the twelve (12) member jury that convicted him."

(ECF No. 18 at 5; ECF No. 18-2 at 8-10.) [1]

---

[1] The Amended Petition incorporates by reference the ineffective assistance of counsel claims that Gauldin raised in his post-conviction appeal.

# LEGAL STANDARDS

## I. Habeas Review and Procedural Default

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2) (internal citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first

instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent

5

of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

**II. Ineffective Assistance of Counsel**

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was

"within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Id.* at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

### III. Sufficiency of the Evidence

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (holding *Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 319. *See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (holding that, under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.").

The AEDPA adds a layer of deference to *Jackson's* already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or "based on an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254(d)(1)-(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 566 U.S. at 656.

**DISCUSSION**

Respondent Rusty Washburn has filed the state-court record and an answer to the Amended Petition.[2] (ECF No. 26; ECF No. 27.) He argues that some of Petitioner's claims are procedurally defaulted, while the remainder are without merit. Petitioner did not file a reply, although allowed to do so.

**I.      Claim 1**

Petitioner's sole assertion in Claim 1 is "tampering with evidence." Although the official § 2254 form used by Petitioner required him to set forth supporting facts for his claim, he failed to do so. The claim is therefore inadequately pled and must be dismissed. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012) ("Merely conclusory allegations . . . are insufficient to state a constitutional claim" on federal habeas review).

Respondent notes that, by his assertion of "tampering with evidence," Petitioner may mean to challenge the TCCA's determination that the evidence was sufficient to establish the weights of the drugs. He argues, however, that any such claim would be without merit. The Court agrees.

The statute under which Gauldin was convicted provides that "[i]t is an offense for a defendant to knowingly . . . [s]ell a controlled substance," including cocaine, and that the sale of "point five (0.5) grams or more of any substance containing cocaine" "is a Class B felony, while the sale of cocaine in "an amount of less than point five (0.5) grams, is a Class C felony." Tenn. Code Ann. § 39-17-417 (a)-(c). In addition, "selling cocaine within 1,000 feet of a park increases the punishment by one classification." *Gauldin*, 2014 WL 12651022, at *2 (citing Tenn. Code Ann. § 39-17-432(b)(1)). Gauldin argued on appeal that the evidence was insufficient to support his convictions for the sale of cocaine in a drug-free zone because the

---

[2]  The Clerk is **DIRECTED** to modify the docket to reflect Rusty Washburn as Respondent. *See* Fed. R. Civ. P. 25(d).

9

"convictions were based on 'conjecture, guess, speculation, and the possibility as to who the individual was, the weight of the cocaine, and where exactly the alleged sales took place.'" *Id*. With regard to the drug weights specifically, he "question[ed] the manner in which the evidence was handled in that the weights of the crack cocaine varied each time that they were weighed at the TBI crime lab." (ECF No. 26-5 at 13.) The discrepancies, he argued, undermined the reliability of the weights reported.

In assessing the sufficiency of the evidence to support the convictions, the appellate court identified "[t]he relevant question" as "whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt." *Gauldin*, 2014 WL 12651022, at * 2. "Viewing the evidence in the light most favorable to the State," the court found

> . . . that Dyersburg police utilized a confidential informant, Mr. Singleteary, on two occasions, to purchase drugs. Mr. Singleteary and his car were searched, he was provided with money for the transaction, and he was outfitted with audio and visual recording devices. On both occasions, Mr. Singleteary bought cocaine from Appellant, spending $60 each time. Mr. Singleteary identified Appellant as the seller of the drugs on both occasions. The substances were tested and found to be .55 grams and .39 grams, respectively. Additionally, the transactions took place within 1,000 feet of Scott Street Park, a park for the purposes of T.C.A. § 39–17–432(b)(1).

*Id.* at *3. Noting that "the credibility and weight given to a witnesses's [sic] testimony are issues resolved by the jury as the trier of fact," the TCCA deferred to the jury's decision "to accredit the testimony of the officers." *Id.* It concluded, therefore, that Gauldin was "not entitled to relief on" his evidence sufficiency challenge. *Id.*

Because the TCCA correctly identified *Jackson*'s evidence sufficiency standard and applied it to the facts of Petitioner's case, its determination that the evidence was sufficient to support the convictions is not "contrary to" controlling Supreme Court law. *See Williams*, 529

U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

In addition, the appellate court's findings that the drugs sold on December 21, 2010, weighed .55 grams and those sold on December 22, 2010, weighed .39 grams, are not unreasonable factual determinations. As TBI special agent Harris testified, a former TBI agent named Melanie Johnson weighed and tested the crack cocaine in 2011, reporting weights of .5 grams and .4 grams. Because agent Johnson moved out of state prior to trial, agent Harris reweighed and retested the drugs in February 2012. She reported weights of .55 grams and .39 grams. When asked to explain why her results differed from those reached by the former agent, she testified that, in the interim between the two testing dates, the TBI had changed its policies to require that weights be reported to two decimal points. She also confirmed that although the former agent reported .5 grams of crack cocaine for the drugs sold on December 21, 2010, the former agent's notes showed an actual weight of .55 grams. Harris also opined that the difference between the .4 and the .39 figures for the drugs sold on December 22, 2010, could be accounted for by the fact that some of the drug is used up each time it is tested. (ECF No. 26-2 at 69-95.)

The jury implicitly credited agent Harris's testimony. Consistent with *Jackson*'s commands, the state appellate court did not disturb that credibility decision. *See Jackson*, 443 U.S. at 319. Petitioner has not pointed to any clear and convincing evidence to undermine the agent's testimony that the drugs Gauldin sold on two different dates weighed .55 grams and .39 grams, respectively.

11

Based on this record, the TCCA's conclusion that the evidence was sufficient to support the convictions is patently reasonable.

Claim 1 is **DISMISSED**.

### III. Claims 2 and 3

Petitioner asserts "sentence range" and "double jeopardy" as Claims 2 and 3, respectively. The claims are conclusory, and therefore must be dismissed as inadequately pled.

They are also procedurally defaulted. Petitioner did not raise either claim before the state appellate court, and he has not alleged cause to excuse the defaults or that he has new reliable evidence of his actual innocence.

Claims 2 and 3 are therefore **DISMISSED**.

### IV. Claim 4

Petitioner asserts that his defense attorney rendered ineffective assistance in four ways, as set forth in Claims 4A, 4B, 4C, and 4D. The claims are properly before this Court, as Gauldin raised them on appeal from the denial of post-conviction relief. *See Gauldin*, 2016 WL 6601552, at *3.

Having reviewed the state court record, this Court determines that the TCCA's decision denying Petitioner's ineffective assistance claims passes muster under the AEDPA's standards. First, the decision is not contrary to controlling Supreme Court law because the appellate court invoked and applied *Strickland*'s standards. *See id.* at *4. Second, as discussed below, the decision is not based on unreasonable factual determinations or unreasonable applications of *Strickland*'s standards to those facts.

**A. Claim 4A**

Petitioner asserts that his trial counsel rendered ineffective assistance by failing to present evidence that Scott Street Park "was no longer an operational park" at the time of the offenses. He argues that, had counsel shown that the park was a "vacant lot," he would not have been convicted of selling a controlled substance in a drug-free zone. (ECF No. 26-17 at 9.) The TCCA rejected the claim:

> The Petitioner argues that trial counsel failed to introduce current photographs of Scott Street Park to rebut the State's proof that the park was in fact a city park rather than a vacant, empty lot. The post-conviction court determined, and we agree, that "there was ample proof in the record that the [drug sale] took place near the Scott Street Park, which is a city park ... and is a drug free zone." Trial counsel contacted "the City Recorder or someone at City Hall" and confirmed that Scott Street Park was registered as a city park. The post-conviction court found that there was nothing further trial counsel could have done "to indicate that it was not a drug free zone." Upon our review, the record does not preponderate against the findings of the post-conviction court. Moreover, the Petitioner did not present any evidence to dispute the fact that Scott Street Park was a city park at the post-conviction hearing. The Petitioner is not entitled to relief on this issue.

*Gauldin*, 2016 WL 6601552, at *5.

The appellate court's decision is not based on an unreasonable factual determination that Scott Street Park was operational at the time of Petitioner's offenses. Officer Michael Leggett testified at Gauldin's criminal trial that Scott Street Park contained "a swing set," "a bar-be-cue grill[,] and a covered awning," and that he had "personally seen people—kids playing in the park." (ECF No. 26-2 at 60.) He further testified that a 2012 photograph of the park accurately showed the park as it existed eighteen months earlier at the time of Gauldin's offenses. An employee of the Dyersburg Geographic Information System also testified that the area was designated and maintained by the city as a park. (*Id.* at 98.) At the post-conviction hearing, defense counsel testified that one of the photographs of the park submitted at trial "came from the video" taken during one of Petitioner's drug sales. (ECF No. 26-14 at 75.) He also stated that prior to trial he drove past the park on the way to work "probably fifty times" and saw "a

13

pavilion," and "swing sets," and children "running and playing." (*Id.* at 76, 79.) Counsel reported that he called the city to confirm that Scott Street Park was still listed as a park. Petitioner has not identified clear and convincing evidence that the park was not used as a park in late 2010.

On this record, it is clear that counsel's decision not to challenge Scott Street Park's status as an operational park was a strategic one based on a thorough investigation into the facts. *See Strickland*, 466 U.S. at 690-91. The TCCA's conclusion that counsel did not render ineffective assistance is therefore not unreasonable.

Claim 4A is **DENIED**.

### B. Claim 4B

Petitioner asserts that his trial counsel rendered ineffective assistance by failing to "present an expert witness who could explain why there was a difference in the weight [of the drugs] from the lab reports and rebut the explanation of the Lab Agent." The TCCA rejected the argument, finding that "the TBI witness provided an adequate explanation for the difference," that "trial counsel testified that he did not believe an expert was necessary because the explanation provided was reasonable," and that "Petitioner presented no additional witnesses during his post-conviction hearing to establish that such a witness would have made a difference at his trial." *Gauldin*, 2016 WL 6601552, at *5. The appellate court therefore concluded that Petitioner "failed to establish deficient performance." *Id.* The court did not reach *Strickland*'s prejudice prong.

The TCCA's decision is not based on unreasonable factual determinations. As noted earlier, the TBI agent provided credible explanations for the discrepancies between the reported drug weights. Petitioner has not identified clear and convincing contrary evidence to undermine

her testimony. In addition, counsel testified at the post-conviction hearing that he did not see the need for an expert because he had placed a call to "the new lab tech . . . and they gave me an explanation of why there was a difference." (ECF No. 26-14 at 80.) The post-conviction trial court implicitly found counsel's testimony to be credible (ECF No. 26-13 at 45), and the TCCA reasonably refused to disturb that credibility finding. As to the TCCA's factual determination that Petitioner did not submit evidence of what an expert would have said if called as a witness, this Court's review of the record confirms that no such evidence was presented. *See e.g.*, *Kestner v. Lafler*, 2011 WL 8004777, at *17 (W.D. Mich. Dec. 29, 2011) ("The state court's conclusion that Petitioner had failed to provide facts supporting his claim is itself a finding of fact, which is presumed to be correct under the AEDPA absent clear and convincing evidence to the contrary."), *report and recommendation adopted*, 2012 WL 2120000 (W.D. Mich. June 11, 2012).

Based on all of these facts, the state appellate court did not unreasonably conclude that counsel did not render ineffective assistance in choosing not to call an expert. The record shows that counsel made a strategic choice after a reasonable inquiry into the drug weight discrepancies. *See Strickland*, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .") Moreover, in the absence of evidence as to what an expert would have said if called to testify, the appellate court was faced with a record that did not suggest a material misstep by counsel.

For all of these reasons, Petitioner has not shown that the TCCA's decision fails AEDPA review. Claim 4B is therefore **DENIED**.

C. **Claim 4C**

Petitioner asserts that his trial counsel rendered ineffective assistance by failing to advise him that he was subject to being sentenced as a Range III Persistent Offender. Petitioner insists that, had counsel presented that information to him, he would have accepted the prosecution's plea offer.

In rejecting the claim, the TCCA found that "trial counsel told the Petitioner on numerous occasions that he would be sentenced as a Range III, Persistent Offender," and that, "[p]rior to each of his two trials, trial counsel and the trial court discussed the Petitioner's sentence range with him." *Gauldin*, 2016 WL 6601552, at *5. The court also found that a letter from Petitioner's prior counsel "outlining his sentence classification and sentence range for each conviction" was hand delivered to him in jail. *Id.* "Although the Petitioner claims to have never received this letter or discussed this letter with trial counsel, the post-conviction court determined that this claim was 'simply not believable.'" *Id.* The TCCA further noted that a hearing was held at which Gauldin's first counsel argued against his classification as a Range III offender, but the argument was rejected by the trial court. As to Petitioner's allegation "that he would have pled guilty had he known his status as a Range III, Persistent Offender," the appellate court found the allegation was "belie[d]" by his written statement to his attorney that he wanted to proceed to trial "because he believed the State was unable to locate its witness for trial." *Id.*

The TCCA's determination that counsel was not ineffective in his sentencing advice was not based on unreasonable factual determinations. The post-conviction trial court found that counsel credibly testified that he told his client multiple times about his Persistent Offender status, and that Petitioner's insistence that he did not receive that advice was not credible. (ECF No. 26-13 at 46.) The TCCA reasonably refused to disturb the lower court's credibility determinations. Gauldin's letter to his attorney (ECF No. 26-15 at 15), together with counsel's

16

testimony that he advised his client "[w]ay more than once" to accept the plea offer (ECF No. 26-13 at 71), support the appellate court's finding that Petitioner insisted on proceeding to trial because he thought the State could not make its case. Petitioner has not pointed to any clear and convincing contrary evidence.

Based on these facts, the TCCA's determination that counsel did not render ineffective assistance is patently reasonable. Petitioner therefore has not established that the TCCA's rejection of his claim was based on an unreasonable application of *Strickland*'s standards to the facts.

Claim 4C is **DENIED**.

**D. Claim 4D**

Petitioner claims that his attorney rendered ineffective assistance by failing to object that the "jury . . . was unconstitutionally empaneled" because "there were no African-Americans on the twelve (12) member jury that convicted him." The claim is properly before this Court because it was litigated at the post-conviction hearing and raised on appeal from the denial of post-conviction relief. *See Gauldin*, 2016 WL 6601552, at *5-6.

The Supreme Court's decision in *Duren v. Missouri*, 439 U.S. 357, 364 (1979), provides the controlling legal standards for a claim that the defendant's jury did not represent a fair cross-section of the community. *Hinton v. Skipper*, 2018 WL 3584707, at *2 (6th Cir. July 11, 2018) (unpublished decision). Under *Duren*, a defendant must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren*, 439 U.S. at 364.

17

In Gauldin's post-conviction appeal, the TCCA rejected his claim that counsel was ineffective for failing to lodge a fair cross-section objection, concluding that there was no merit to the underlying allegation of a cross-section violation. Although finding that *Duren*'s first prong was met, it determined that Gauldin "failed to establish the remaining two prongs of the . . . test." *Gauldin*, 2016 WL 6601552, at *6. The court explained:

> [T]he Petitioner did not argue or present any proof that African Americans were unfairly underrepresented in his county or that such underrepresentation resulted in their systematic exclusion. There was no data from the court clerk explaining how jurors were selected, no census reports to compare the population of African Americans in the county against the number of African Americans selected for jury service, and no statistics showing that the alleged underrepresentation caused systemic exclusion.

*Id.* The court further held that "Petitioner's vague recollection of two African American jurors in the jury venire who were not called to be seated for the final jury," was a conclusory allegation that was "insufficient to establish relief." *Id.* "Petitioner," therefore, "failed to establish deficient performance or prejudice in regard to this issue." *Id.*

The TCCA's decision easily passes muster under the AEDPA. First, the ruling is not contrary to controlling Supreme Court law because the appellate court identified the correct legal test from *Duren*. Second, Petitioner has failed to identify any clear and convincing evidence to undermine the TCCA's factual determination that there was no evidence in the record relevant to *Duren*'s second and third prongs. That determination is therefore not unreasonable. Finally, based on the absence of evidence of a fair cross-section violation, the appellate court reasonably concluded that Gauldin's attorney was not ineffective for failing to make the objection. *See e.g.*, *Medina v. Genovese*, 2016 WL 4480104, at *12 (M.D. Tenn. Aug. 25, 2016) (holding that state court's determination that counsel was not ineffective for failing to make a fair cross-section objection was reasonable where the petitioner only complained "about the racial composition of

18

the venire and jury," and did not allege "that anything about the method of selection for the jury venire or the seated jury was discriminatory.")

Claim 4D is therefore **DENIED**.

For all of these reasons, the Amended Petition is **DENIED**. Judgment shall be **ENTERED** for Respondent.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Amended Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R.

App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reasons it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[3]

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: November 2, 2018

---

[3] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.